No. 26,598.

J. D. McNeill, *Appellant,* v. Kansas-Texas Petroleum Company and K. T. Oil Corporation, *Appellees.*

### SYLLABUS BY THE COURT.

Agency—*Contract for Compensation—Privity of Subagent.* The proceedings considered in an action on a contract to recover a commission for services performed, predicated on a written contract, and *held,* there was no evidence of privity of contract between plaintiff and defendants with respect to payment of the commission sued for.

Appeal from Douglas district court; Hugh Means, judge. Opinion filed April 10, 1926. Affirmed.

*George K. Melvin* and *R. E. Melvin,* both of Lawrence, for the appellant.
*Robert C. Foulston, W. E. Holmes, D. W. Eaton, George Siefkin* and *Sidney L. Foulston,* all of Wichita, for the appellee.

The opinion of the court was delivered by

Burch, J.: The action was one to recover a commission for services performed by plaintiff in selling participating operation certificates issued by the Kansas-Texas Petroleum Company, which has been succeeded by the K. T. Oil Corporation. Plaintiff based his action on a written contract with the first company. A demurrer to his evidence was sustained, and he appeals.

Agency, 2 C. J. pp. 779 n. 66, 954 n. 83. Corporations, 14a C. J. p. 148 n. 59.

Plaintiff was employed under a written contract dated May 12, 1920, and signed by F. E. Gordon. In the premises of the instrument Gordon styled himself "district agent, of Kansas City, Mo." His principal, if he had any, was not disclosed, and the contract was one between Gordon and McNeill. The authority granted was to sell participating operating certificates of the Kansas-Texas Petroleum Company, a corporation, of Wichita, Kan. The commission to be paid was ten per cent on all sales of participating certificates approved by the corporation. One provision of the contract indicated McNeill might have agents of his own. The bank commissioner issued a certificate expiring March 1, 1921, that the Kansas-Texas Petroleum Company had caused the name of McNeill to be registered as its agent to sell its securities in Kansas. McNeill took applications for certificates in a service station to be established at Lawrence, to the amount of $10,000, on which he was entitled to a commission of $1,000. Gordon collected the money paid for the certificates. In the course of McNeill's efforts to establish the Lawrence station he had various communications with the company and had a personal conference with one of its representatives. In one letter the company said it was looking forward to "each of our agents" closing one station a week, and any special effort on McNeill's part would be appreciated.

It is argued the company accepted McNeill as its agent, accepted the fruits of his services, and consequently made Gordon's contract with McNeill its own. Gordon's appointment and authority were in writing. He was appointed by M. E. Sturgeon, of Wichita, exclusive agent to sell certificates in a territory comprising twenty counties of northeastern Kansas. His commission was to be fifteen per cent of the amount of certificates sold, and his contract with M. E. Sturgeon contained the following provision:

"It is further agreed that second party [Gordon] shall be permitted to employ agents for the selling of said certificates, but first party [Sturgeon] assumes no responsibility as to the transactions of said agents. It is understood that all contracts made with said agents shall be made by second party, and that all settlements therefor shall be made by second party."

M. E. Sturgeon's appointment and authority were in writing. She was appointed by the company, and a part of her contract reads as follows:

"The first party [the company], in consideration of the covenants and agreements hereinafter entered into by the second party [Sturgeon], and for other and sufficient considerations, the receipt of which are hereby acknowl-

edged, hereby agrees to contract with, hire and engage said second party for a period of time necessary to secure sufficient funds for the conduct and operation of the business of the first party, for the establishing of service stations within the state of Kansas and the equipment of said service stations for the transaction of a retail gas business.

"The said first party hereby agrees to pay said second party a commission of twenty per cent on all subscriptions made and money received for the sale of participating operation certificates, and second party hereby agrees to pay all expenses out of said commission which may be incurred in the sale of said participating operation certificates and advertising said certificates for sale.

"The president and treasurer of said company are by this contract required to issue the participating operation certificates from time to time as sales are made by second party and settlement made with the treasurer of said company for such sales."

Pursuant to this contract, M. E. Sturgeon appointed agents to sell certificates, and purchased land for filling stations. She sold no certificates herself, and in fact received no commissions. Without formal modification of the contract, she was paid a salary and expenses, but there was no evidence her contract was modified in any other respect. Gordon was her agent. His appointment did not designate him district agent. Apparently he assumed that title because of the extent of the territory for which he was exclusive agent. M. E. Sturgeon had no authority to obligate the company to pay commissions on certificates sold by her agents, and in her contract with Gordon she required him to pay his own agents. The scheme of operation disclosed by the contracts described required that the company recognize persons able to trace authority from it to make sales, as its "agents" to sell, and to coöperate with them in establishing filling stations. But selling agents worked under their contracts of appointment, and the company had no privity with any one of them in respect to payment of compensation, except M. E. Sturgeon.

Gordon died in August, 1920, and his widow testified the Missouri court gave her permission to settle his estate. She received $500 on account of services rendered by her husband in connection with installation of the Lawrence station. Gordon had two agents working for him in establishing the Lawrence station—McNeill and Goldtrap. So far as the record discloses, the payment to Mrs. Gordon was a voluntary payment. There is no evidence that either the old company or the K.-T. Corporation, organized in September, 1920, was under any obligation to pay either McNeill or Goldtrap, and the payment to Mrs. Gordon did not create or prove liability

to them.   McNeill's contract for commissions was with Gordon
alone, and the terms of Gordon's appointment required him to
settle with his own subagents.

The judgment of the district court is affirmed.